In the matter of the assessment of damages upon the bond given
by DANIEL CONOVER, as guardian of Charles Schanck, a
minor.

The sureties of a guardian who are released by virtue of an application for
relief under the one hundred and twenty-fourth section of the orphans court
act, while they are, on the giving of new sureties by the guardian, released
from liability for the subsequent acts, defaults and misconduct of their prin-
cipal, are in no wise discharged from liability for his acts, default or miscon-
duct precedent thereto. Therefore, where a guardian had wasted the estate
before the giving of new sureties pursuant to the application of the original
ones, the latter were held liable, notwithstanding the demand for the wasted
funds was not made until after the new sureties had been given.

On exceptions to report of A. R. Throckmorton, esq., surro-
gate of Monmouth county, to whom it was referred to ascertain
and report damages.   Submitted on briefs of counsel.

*Mr. C. Robbins,* for surviving surety.

*Mr. W. H. Vredenburgh,* for ward.

THE ORDINARY.

Daniel Conover was appointed guardian of Charles Schanck,
a minor, then under fourteen years of age, May 27th, 1867.   He
gave bond in the penalty of $4,000, with Hendrick P. Conover
and Stacy P. Conover as his sureties.   Of the minor's estate he
received as guardian in 1867 and 1868, $4,692.19.   On the 27th
of May, 1877, the orphans court of Monmouth county, under
the one hundred and twenty-fourth section of the orphans court
act, on the petition of Stacy P. Conover and the executors of
Hendrick P. Conover (who was then dead), by its order released
the sureties from liability on the bond for any subsequent act,
default or misconduct of the guardian, and the guardian gave a
new bond with other sureties.   By the guardian's account, then
filed and settled, there appeared to be then due from him to the

ward a balance of $4,242.82.   The surrogate finds that the bal-
ance was, in fact, $5,298.57.   On the same day on which the
sureties were released, the orphans court, on the petition of the
guardian, who thereby represented that he had $2,133.15 of the
money of the minor in his hands to invest, and prayed direction
in the premises, directed him to invest that money on his own
bond, to be given to a trustee for the minor, and to be secured
by a mortgage on his farm (on which there were previous encum-
brances stated in the petition), with an assignment of a policy of
insurance against fire, as collateral; and he gave the bond and
mortgage, and made the assignment accordingly.   Of the ward's
money, he had about two years previously expended, without
authority, $2,000 in paying off a mortgage held by Isaac G.
Smock on the farm.   He had, however, kept that mortgage alive
by causing it to be assigned to the minor, and at the request of
the surviving surety on the guardian's bond and the executors
of the other, he had, as guardian, assigned it to a trustee for
them for their indemnity against loss by reason of liability on
that bond.   After the ward came of age suit was brought in the
name of the ordinary on the bond, against the guardian and the
surviving surety, and a judgment recovered therein December
13th, 1880, for the amount of the penalty, $4,000.   A reference
was subsequently made in this court to the surrogate of Mon-
mouth county, to ascertain and report the amount of damages
sustained by the ward.   He reports the amount due at the date
of the judgment on the bond at $3,877.17, and the report is
brought before me on exceptions filed by the ward and the sur-
viving surety, respectively.   One of the breaches assigned in the
suit on the bond was non-payment of the money due the ward
on demand made after he came of age.   The liability of the
sureties on the bond is limited to the acts, default or misconduct
of the guardian prior to May 21st, 1877, the date of the before-
mentioned order of release.   There was at that date due from
the guardian to the ward the sum of $5,298.57.   Of this
amount $2,133.15 were invested under the order of that date,
and $2,000 had been previously (it was in May, 1875) expended
in paying off the Smock mortgage.   The surviving surety insists

that both of these sums should be allowed as investments properly made on account of the ward.

It is clear that when the guardian employed the money of the ward, without any authority whatever, in paying off a mortgage on his own farm, he was guilty of a *devastavit* to that extent. And though he kept the mortgage on foot, and caused it to be assigned to the ward, he afterwards assigned it away to his sureties for their indemnity against liability on his bond, and they still hold it. He never regarded it as an investment of the ward's money, and if he had done so, he assigned it away. Obviously, there should be no allowance for the money expended in paying off that mortgage. As to the other one, it is true he did not, when he applied to the orphans court for direction as to investing the money which it represents, actually have the money in his hands for investment, though he may be said to have had it so in a certain sense. He owed it to the ward, and by the petition acknowledged his liability for it, and alleged his readiness to pay it by declaring that he had it in his hands for investment. He had in fact spent it in his own business, and had at that time been guilty of a *devastavit* as to it. The application was in fact rather an application for authority to secure money he had improperly expended, than for directions to invest the money in hand. But the propriety of the order of the orphans court cannot be called in question collaterally.

The surety, however, insists that he is discharged because the failure to pay on demand took place after the new bond was given. But the statute does not discharge existing sureties absolutely on the giving of a bond with new sureties, but only from liability for subsequent acts, defaults or misconduct of the principal. Their liability still continues as to acts, defaults and misconduct previous to the discharge. The defence under consideration was set up in the suit on the bond, but without avail. According to the evidence the waste of the estate took place before the new bond was given. There is no evidence to the contrary. The exceptions on both sides will be disallowed, and the master's report confirmed.